IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

COREY J. SAMUEL,
    Plaintiff,

vs.                                    Case No.: 3:12cv218/RV/EMT

OFFICER JOHNSON, et al.,
    Defendants.
_____/

**REPORT AND RECOMMENDATION**

    Plaintiff Corey J. Samuel ("Plaintiff"), an inmate, proceeds pro se and in forma pauperis in this action brought pursuant to 42 U.S.C. § 1983. Plaintiff sues Jeremiah B. Johnson ("Johnson") and Brenan Clark ("Clark") (together, "Defendants"), both of whom are correctional officers employed by the Florida Department of Corrections at Santa Rosa Correctional Institution ("SRCI"). The case was referred to the undersigned for the issuance of all preliminary orders and any recommendations to the district court regarding dispositive matters. *See* N.D. Fla. Loc. R. 72.2(C); *see also* 28 U.S.C. § 636(b)(1)(B)(C), and Fed. R. Civ. P. 72(b). Presently before the court is the motion for summary judgment pursuant to Fed. R. Civ. P. 56 filed by Defendants (doc. 65), to which Plaintiff has responded in opposition (doc. 71). For the reasons set forth below, the court recommends that Defendants' motion for summary judgment be denied.

I.    BACKGROUND AND PROCEDURAL HISTORY

    Plaintiff initiated this action on May 7, 2012, by filing a complaint in which he alleges that Defendants used excessive force against him on February 27, 2012, in violation of the Eighth Amendment (doc. 1). Suing Defendants in their individual capacities, Plaintiff seeks, *inter alia*, declaratory relief; punitive, compensatory, and nominal damages; costs and attorneys' fees; and any

other relief the court deems just (*id.* at 8–9).[1] Defendants argue they are entitled to judgment in their favor because the use of force was justified and necessary to control Plaintiff when he became unruly and attempted to break free from their custodial hold, and Plaintiff suffered only *de minimis* injury (doc. 65 at 16).[2] The parties submitted evidence in support of their respective positions (docs. 65-2; 65-5–8; 66-1; 66-2; 71), and the undersigned issued an order on April 29, 2013, informing the parties of the importance and ramifications of summary judgment consideration and providing them with information as to the requirements for materials submitted for review pursuant to Rule 56 (doc. 68). This matter is now ripe for review.

II. MATERIAL FACTS

As this case comes before the court on Defendants' motion for summary judgment, the court views the facts in the light most favorable to Plaintiff, the non-moving party, *see* Hairston v. Gainesville Sun Publ'g Co., 9 F.3d 913, 918 (11th Cir. 1993), drawing those facts from the pleadings, depositions, and other evidentiary materials on file. Nevertheless, the court observes that what are stated as "facts" herein for purposes of summary judgment review may not be the actual facts. *See* Montount v. Carr, 114 F.3d 181, 182 (11th Cir. 1997).

With regard to the factual positions asserted by the parties, the court must apply the standard set forth in Rule 56(c) of the Federal Rules of Civil Procedure, which provides in relevant part:

> **(1) Supporting Factual Positions.** A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> > **(A)** citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

---

[1] Plaintiff also alleges that following the use of excessive force Clark wrote a false disciplinary report that resulted in Plaintiff's confinement for thirty days and no loss of gain time (doc. 1 at 6). No claims related to this brief allegation are raised, but the court notes the following. There is no assertion or factual support for the position that retaliation was Clark's motive, as Plaintiff alleges only that Clark wrote the disciplinary report "to cover up his illegal use of force" (*id.*). Moreover, no due process claim would lie, as in cases where a disciplinary decision does not result in the loss of gain time, and the only penalty is placement in disciplinary confinement for thirty days, due process protections do not attach. *See* Sandin v. Conner, 515 U.S. 472, 485, 115 S. Ct. 2293, 2301, 132 L. Ed. 2d 418 (1995).

[2] The page numbers in this Report and Recommendation are the numbers assigned by the court's electronic docketing system, rather than the page numbers or exhibit references the parties may have designated.

>   **(B)** showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.
>
> . . . .
>
>   **(4) Affidavits or Declarations.** An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.

Fed. R. Civ. P. 56(c) (2010). If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court will consider the fact undisputed for purposes of the motion for summary judgment, or grant summary judgment if Defendants' motion and supporting materials—including the facts considered undisputed—show that Defendants are entitled to it. *See* Fed. R. Civ. P. 56(e)(2, 3) (2010). Any facts included in Defendants' statement of material facts that are not controverted in Plaintiff's response are deemed admitted. *See* N.D. Fla. Loc. R. 56.1(A) (all material facts set forth in moving party's statement of undisputed material facts will be deemed admitted unless controverted by statement required to be filed and served by opposing party). Applying these standards, the court conveys the following as the material facts.

The court has supplemented slightly Defendants' brief statement of the undisputed facts with some additional information taken from the cited sources. On February 27, 2012, Plaintiff was housed in SRCI's Q-Dormitory, which is located in the institution's Annex (*see* docs. 1 at 5; 65 at 4; 66-1 at 2; 66-2 at 1; 65-6 at 4, 8, 22, 24). Plaintiff's classification at that time was Close Management I ("CM-I")[3] (docs. 65 at 4; 65-5 at 1, 9). On the date in question, Defendants were directed to transport Plaintiff to a new cell assignment in F-Dormitory, which is located in the main unit of SRCI; according to Defendants, F-Dormitory provides fewer privileges and comforts to inmates than does Q-Dormitory and thus is considered to be a less desirable assignment (docs. 65 at 4; 66-1 at 2; 66-2 at 2). At approximately 12:35 p.m., Defendants began escorting Plaintiff to

---

[3] Defendants state that Close Management is a classification which is often assigned to inmates with a history of disciplinary problems and other disruptive behavior and that CM-I is the most restrictive of the three Close Management levels (doc. 65 at 4 n.6, citing Rule 33-601.800, Florida Administrative Code).

F-Dormitory (docs. 65 at 4; 65-6 at 8, 22, 24), walking with one of them on either side of Plaintiff. As the three men approached the gate between H Dormitory and G Dormitory, Defendants utilized force against Plaintiff, taking him to the ground (docs. 1 at 5; 65 at 4; 66-1 at 2; 66-2 at 2; 65-6 at 8, 22, 24). Following the incident, other officers arrived and escorted Plaintiff to the medical department for an evaluation (docs. 65-4; 66-1 at 1; 66-2 at 1). The evaluation report notes minor abrasions, some facial swelling, and a missing tooth[4] (doc. 65-6 at 8, 18; *see also* doc. 1 at 6).

Plaintiff alleges additional facts not mentioned by Defendants or which they dispute or claim no knowledge of.[5] Plaintiff contends that on February 26, 2012, which was the day prior to the use-of-force incident, he had a heated argument with an officer in Q-dormitory (doc. 1 at 5). In their affidavits, Johnson and Clark state they are unaware of any argument or incident between Plaintiff and another officer on February 26, 2012, or any other day (docs. 66-1 at 2; 66-2 at 2). According to Plaintiff, on February 27, 2012, during his transport to F Dormitory, he was shackled and handcuffed, with his hands secured behind his back and the cuffs attached to a waist chain. During the escort, Defendants and Plaintiff reached a "blind spot" (i.e., an area out of view of most other persons and security cameras[6]) behind G and H Dormitories; it was there, Plaintiff asserts, that before taking him to the ground Johnson stated, "This is a hit from Q-Dormitory." (doc. 1 at 5). As Plaintiff describes the use-of-force incident, Defendants picked him up approximately four feet off the ground, then slammed him head-first into the concrete surface below (*id.*). Once Plaintiff was on the ground, Defendants "dropped their weight on the Plaintiff's back, causing extreme pain" (*id.*). According to Plaintiff, his weight at the time was approximately 140 pounds and Defendants'

---

[4] The parties agree that the missing tooth is tooth #9, the upper left central incisor, or the upper left "front tooth" (*see* doc. 65-8 at 2, affidavit of Thomas E. Shield, D.D.S., and doc. 71 at 22, affidavit of Plaintiff).

[5] Plaintiff signed his complaint under penalty of perjury. Therefore, the factual allegations in the complaint may be used as an opposing affidavit. *See* Perry v. Thompson, 786 F.2d 1093, 1095 (11th Cir. 1986); *see also* 28 U.S.C. § 1746 (setting forth requirements for unsworn declarations under penalty of perjury). To function as an opposing affidavit, a complaint must be based on personal knowledge and set forth specific facts admissible in evidence. Fed. R. Civ. P. 56(c); Perry, *supra*. Accordingly, the court considers those portions of Plaintiff's complaint that meet the personal knowledge and specificity requirements as part of Plaintiff's opposition to the motion for summary judgment. *See also* Moulds v. Bullard, 345 F. App'x 387, 391 (11th Cir. 2009) ("[S]pecific facts pled in a sworn complaint must be considered in opposition to summary judgment.") (citing Perry); Shaw v. Cowart, 300 F. App'x 640, 645 (11th Cir. 2008) ("Facts alleged by the plaintiff in a sworn pleading" must be considered in opposition to summary judgment).

[6] *See* doc. 71 at 11-12, affidavit of inmate Robert D. Kornagay.

Case No.: 3:12cv218/RV/EMT

combined weight was in excess of 320 pounds (docs. 71 at 2, 15; 65-5 at 15–16). Plaintiff further alleges that Johnson grabbed Plaintiff's head with both hands and "repeatedly slam[m]ed and rubbed it on the concrete causing Plaintiff's tooth to be knocked out of the socket" (doc. 1 at 5). Defendants do not appear to dispute that Plaintiff's tooth was broken or otherwise damaged during the incident but contend the tooth was already in a severely deteriorated and weakened condition that made it especially vulnerable to injury (doc. 65-8 at 2). Plaintiff further asserts that during the incident both Defendants punched and slapped him, and Johnson reached his hand inside Plaintiff's pants to grasp and yank Plaintiff's underwear, wedging it between Plaintiff's buttocks (doc. 1 at 5). Johnson also slapped Plaintiff on the buttocks (*id.*). Plaintiff describes his injuries resulting from Defendants' actions as including a knocked-out tooth, a busted lip, a bruised face and head, extreme pain in his back and mouth, mental anguish, emotional distress, depression, and humiliation (*id.* at 6).

Defendants' description of the amount of force used, as stated in their affidavits, differs significantly from Plaintiff's version. Defendants state that their use of force was "spontaneous" and exercised only in response to Plaintiff's combative conduct—which included yelling obscenities, threatening both Defendants, and attempting to break free from Defendants' custodial touch—which Plaintiff did not cease despite repeated warnings (docs. 66-1 at 2; 66-2 at 1–2). Defendants state they do not know the reason for Plaintiff's misbehavior but speculate that he may have been unhappy with being moved to the more restrictive F-Dormitory (*id.*). According to Defendants, only when it was necessary did they take Plaintiff to the ground and apply pressure using their body weight until Plaintiff was in a prone position; as soon as Plaintiff complied with their orders, the application of force ceased (*id.*). Johnson further states that he and Clark used only the minimum amount of force needed to make Plaintiff comply with their lawful commands (doc. 66-1 at 2). In contrast to Defendants' description of Plaintiff's unruly and noncompliant conduct, Plaintiff maintains that at all times he was "in total compliance with the rules and all orders given" (doc. 1 at 6).

III.    LEGAL STANDARDS

    A.    <u>Summary Judgment Standard</u>

In order to prevail on their motion for summary judgment, Defendants must show that Plaintiff has no evidence to support his case or present affirmative evidence that Plaintiff will be unable to prove his case at trial. *See* Celotex Corp. v. Catrett, 477 U.S. 317, 322–23, 106 S. Ct. 2548, 2553–54, 91 L. Ed. 2d 265 (1986). If Defendants successfully negate an essential element of Plaintiff's case, the burden shifts to Plaintiff to come forward with evidentiary material demonstrating a genuine issue of fact for trial. *Id.* The "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986). A dispute is "genuine" if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*, 477 U.S. at 248. A fact is "material" if it "might affect the outcome of the suit under the governing law." *Id.* Plaintiff must show more than the existence of a "metaphysical doubt" regarding the material facts. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986). Speculation or conjecture from a party cannot create a genuine issue of material fact. *See* Cordoba v. Dillard's, Inc., 419 F.3d 1169, 1181 (11th Cir. 2005). "A mere scintilla of evidence in support of the nonmoving party will not suffice to overcome a motion for summary judgment." Young v. City of Palm Bay, Fla., 358 F.3d 859, 860 (11th Cir. 2004); *see also* Celotex Corp., 477 U.S. at 324. Plaintiff must either point to evidence in the record or present additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency. *See* Celotex Corp., *supra*; Owen v. Wille, 117 F.3d 1235, 1236 (11th Cir. 1997) (Rule 56 requires the nonmoving party to go beyond the pleadings and by his or her own affidavits, or by the depositions, documents, affidavits or declarations, admissions, interrogatory answers or other materials on file designate specific facts showing that there is a genuine issue for trial); Hammer v. Slater, 20 F.3d 1137 (11th Cir. 1994).

Evidence presented by Plaintiff in opposition to the motion for summary judgment, and all reasonable factual inferences arising from it, must be viewed in the light most favorable to him. *See* Adickes v. S. H. Kress & Co., 398 U.S. 144, 157, 90 S. Ct. 1598, 1608, 26 L. Ed. 2d 142 (1970); Jones v. Cannon, 174 F.3d 1271, 1282 (11th Cir. 1999). Nonetheless, Plaintiff still bears the burden of coming forward with sufficient evidence of every element that he must prove. *See* Celotex Corp.,

477 U.S. at 317. A motion for summary judgment should be granted if "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); Celotex Corp., 477 U.S. at 322.

B.     Excessive Force

Claims of excessive force by prison officials fall under the Eighth Amendment's proscription against cruel and unusual punishment. The standard applied to Eighth Amendment claims has a subjective and an objective component. As to the objective component, "not every malevolent touch by a prison guard gives rise to a federal cause of action." Wilkins v. Gaddy, 559 U.S. 34, 37, 130 S. Ct. 1175, 1178 (2010) (citing Hudson v. McMillian, 503 U.S. 1, 9, 112 S. Ct. 995, 117 L. Ed. 2d 156 (1992)). An inmate who complains of a "push or shove" that causes no discernible injury almost certainly fails to state a valid excessive force claim. Hudson, 503 at 9 (quoting Johnson v. Glick, 481 F.2d 1028, 1033 (2d Cir. 1973)). "The Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort 'repugnant to the conscience of mankind.'" Hudson, 503 U.S. at 10 (citation omitted). Accordingly, the Eleventh Circuit requires that the plaintiff suffer more than a *de minimis* injury to establish an Eighth Amendment violation, although courts must remain mindful of the fact that a significant injury is not required. Johnson v. Breeden, 280 F.3d 1308, 1321 (11th Cir. 2002).

Under the subjective component, to sustain an Eighth Amendment challenge it must be shown that prison officials' actions amounted to an "unnecessary and wanton infliction of pain." Whitley v. Albers, 475 U.S. 312, 319, 106 S. Ct. 1078, 1084, 89 L. Ed. 2d 251 (1986). "Force is deemed legitimate in a custodial setting as long as it is applied 'in a good faith effort to maintain or restore discipline [and not] maliciously and sadistically to cause harm.'" Skrtich v. Thornton, 280 F.3d 1295, 1300 (11th Cir. 2002) (quoting Whitley, 475 U.S. at 320–21). In determining whether an application of force was applied maliciously and sadistically to cause harm, a variety of factors are considered including these five: "the need for the application of force; the relationship between that need and the amount of force used; the extent of the threat to the safety of staff and inmates, as reasonably perceived by officials; the extent of injury; and any efforts made to temper the severity of the response." Hudson, 503 U.S. at 7–8; *see also* Whitley, 475 U.S. at 321; Campbell v. Sikes,

169 F.3d 1353, 1375 (11th Cir. 1999). From consideration of such factors, "inferences may be drawn as to whether the use of force could plausibly have been thought necessary, or instead evinced such wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur." Whitley, 475 U.S. at 321 (quoting Johnson, 481 F.2d at 1033). Although the absence of serious injury is relevant to an excessive force claim, the core judicial inquiry is not whether a quantum of injury was sustained but rather whether force was applied in a good-faith effort to maintain or restore discipline or whether it was applied maliciously and sadistically to cause harm. *See* Wilkins, 559 U.S. at 37; *see also* Hudson, 503 U.S. at 4. Additionally, under Eleventh Circuit law, in cases in which a collective use of force is alleged, the court need not analyze separately the force administered by each officer to determine which of the blows or other acts, if any, constituted the use of excessive force. Skrtich, 280 F.3d. at 1302.

That officials followed prison regulations in administering force or restraint provides evidence that they acted in good faith and not to inflict pain. Campbell, 169 F.3d at 1376 (citation omitted). Thus, as summarized in Campbell, "[p]recedent dictates that [the determination whether defendants acted maliciously and sadistically for the very purpose of causing harm] be guided by the five Hudson/Whitley factors outlined above, by deference to prison officials' punitive judgments, and by this Court's previous holdings that compliance with prison policies evidences officials' good faith." *Id.*

The Court in Whitley narrowed the precise inquiry applicable when deciding whether officials are entitled to judgment as a matter of law:

> courts must determine whether the evidence goes beyond a mere dispute over the reasonableness of a particular use of force or the existence of arguably superior alternatives. Unless it appears that the evidence, viewed in the light most favorable to the plaintiff, will support a reliable inference of wantonness in the infliction of pain under the standard we have described, the case should not go to the jury.

Whitley, 475 U.S. at 322 (emphasis added).

IV. DISCUSSION

As noted, whether an application of force was applied maliciously and sadistically to cause harm may be analyzed by application of several factors, including "the need for the application of force; the relationship between that need and the amount of force used; the extent of the threat to the

safety of staff and inmates, as reasonably perceived by officials; the extent of injury; and any efforts made to temper the severity of the response." Hudson, 503 U.S. at 7–8.

Defendants first assert that the extent of Plaintiff's injuries does not support the conclusion that force was applied maliciously and sadistically because the injuries are only *de minimis* in nature. The evidence supplied by Defendants shows that following the incident Plaintiff was described as having "no respiratory distress . . . . Superficial abrasion to lower lip, upper lip, forehead and [right] cheek. Missing tooth[.] Slight swelling on [left] side of jaw" (doc. 65-6 at 18). The undisputed evidence also shows that Plaintiff has a history of extensive dental problems throughout his mouth, including a large three surface restoration of tooth #9 in December 2009, a recommendation of extraction of tooth #9 in May 2011 (which Plaintiff rejected), and a root canal on tooth #9 in December 2011 (doc. 65-8 at 2). Dr. Shields, the dentist who examined Plaintiff's dental records in connection with Defendants' instant motion, notes that a fracture of a tooth as compromised as Plaintiff's could "happen just from eating something hard. It is quite likely that any type of abnormal contact or pressure to the area caused this tooth to break" (*id.*). According to Defendants, the contact to which Plaintiff was subjected during the use-of-force incident thus did "not necessarily ris[e] to the level of excessive force" (*see* doc. 65 at 10). In response, Plaintiff submits that his injuries are greater than *de minimis* in nature (doc. 71 at 5). With respect specifically to the loss of his tooth, Plaintiff avers in his affidavit that after he had a root canal on tooth #9 in December 2011, "the tooth regained its strength, the bleeding stopped, and I no longer had problems with that tooth. . . . I was even able to eat . . . hard items without a problem" (doc. 71 at 22).

"The extent of injury suffered by an inmate is one factor that may suggest whether the use of force could plausibly have been thought necessary in a particular situation." Wilkins, 599 U.S. at 37 (citations and internal quotation marks omitted). The extent of injury may also provide some indication of the amount of force applied. *Id.* The injuries alleged by Plaintiff in this case are somewhat similar to those suffered by the inmate in Hudson, where the Supreme Court held that "bruises, swelling, loosened teeth, and a cracked dental plate, are not *de minimis* for Eighth Amendment purposes." Hudson. 503 U.S. at 10; *compare* Tate v. Rockford, 497 F. App'x 921, 925 (11th Cir. 2012) (noting that laceration on forehead, several small abrasions and cuts, and a swollen right eye—but no broken bones or additional injuries or permanent injury or debilitating

pain—suggest *de minimis* injury). Moreover, although Dr. Shields' testimony suggests that Plaintiff's history of dental problems *could* account for a fracture of tooth #9 if the tooth was exposed to any abnormal pressure or contact, even something as ordinary as eating a hard item, at most this testimony shows that tooth #9 was fragile, susceptible to being broken, and could have been damaged by any sort of abnormal contact or pressure. Dr. Shields' testimony cannot and does not speak to the actual quantum of contact or pressure that broke Plaintiff's tooth. Defendants themselves seem to acknowledge this with their equivocal statement that the contact to which Plaintiff was subjected during the use-of-force incident did "not *necessarily* ris[e] to the level of excessive force" (*see* doc. 65 at 10) (emphasis added). *See* Smith v. Daniels, Case No. 1:07-CV-2166-RWS, 2010 WL 4882950, at *12 (N.D. Ga. November 24, 2010) (stating that dentist's "equivocal statement" that prisoner plaintiff's missing teeth "did not 'appear' to be due to recent injury" was "insufficient to show that the tooth loss was not caused by the use of force alleged by Plaintiff"). Furthermore, Plaintiff contends that after his December 2011 root canal he no longer had problems with the tooth and was able to eat even hard items without injury. In any event, the simple fact is that Plaintiff left Q-Dormitory with tooth #9 intact but arrived at his new dormitory without tooth #9. The only intervening "pressure or contact" on the tooth that occurred was Plaintiff's physical interaction with Defendants, which Plaintiff describes as being "slam[m]ed head first on the concrete" by both Defendants and then having his head repeatedly "slam[m]ed and rubbed . . . on the concrete" by Johnson (doc. 1 at 5). The evidence of the injuries sustained by Plaintiff, the destruction of his tooth in particular, is enough to consider Plaintiff's injuries to be more than *de minimis* in nature. *See* Sneed v. Dixon, Case No. 3:06-CV-59-M (BH), 2007 WL 1202243, at *8 (N.D. Tex. Apr. 23, 2007) (stating that "[g]iven the extent of Plaintiff's injuries he allegedly received as a result of Defendant's use of force, notably the broken tooth, he appears to have alleged more than *de minim[i]s* injuries").

Next, Defendants contend that Plaintiff's disruptive conduct gave rise to the need for the application of force, as he engaged in behavior that was a direct threat to them and could have been to others had they not subdued him. According to Defendants, Plaintiff yelled obscenities, threatened them, and attempted to break free from their custodial hold, conduct which Plaintiff did not cease despite Defendants' repeated orders to do so. In support of their contentions Defendants

rely solely on their own affidavits or their own institutional reports of the incident (*see* doc. 65 at 10, citing docs. 66-1; 66-2; 65-6 at 8, 22, 24). In contrast to Defendants' version of events, Plaintiff alleges in his complaint, under oath but likewise without any other supporting evidence,[7] that he was "in total compliance with the rules and all orders given" by Defendants (doc. 1 at 6).[8] Thus, under Plaintiff's version of the incident, there was no need for the application of any force at all, beyond that which might routinely be needed to escort a compliant prisoner who was handcuffed and shackled. Viewing Defendants' and Plaintiff's conflicting evidence in the light most favorable to Plaintiff, as is proper at summary judgment, the court must accept Plaintiff's version of these facts: Plaintiff did not disobey any prison rules of conduct and obeyed Defendants' orders. Thus, the Hudson/Whitley "need for the application of force" factor weighs in Plaintiff's favor. Consequently, accepting for purposes of summary judgment that there was no need to apply force to control Plaintiff, the court must likewise conclude at this stage of the litigation that the remaining Hudson/Whitley factors—the relationship between the need to apply force and the amount of force used, the extent of the threat to the safety of staff and inmates, and any efforts made to temper the severity of the response—also favor Plaintiff.

In short, the evidence in this case goes beyond a mere dispute over the reasonableness of the force used by Defendants against Plaintiff on February 27, 2012. Rather, viewing the evidence in the light most favorable to Plaintiff, the court concludes that the evidence is sufficient to support "a reliable inference of wantonness in the infliction of pain." Whitley, 475 U.S. at 322. At the summary judgment stage, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." Anderson, 477 U.S. at 255. Due to the existence of a genuine dispute over the material facts, as evidenced by the parties' differing and irreconcilable descriptions of much of the use-of-force incident, deciding whether or not Defendants employed excessive force would necessarily involve crediting one side's version of the incident over the other's. As this would encroach on the province of the jury,

---

[7] As noted previously, the factual allegations in Plaintiff's complaint may be used as an opposing affidavit. *See* Perry, 786 F.2d at 1095.

[8] That neither side has proffered any corroborating statements (or, from Defendants, any videotape) may be due to the apparently isolated nature of the location where the use-of-force incident occurred.

Case No.: 3:12cv218/RV/EMT

summary judgment in Defendants' favor is not appropriate.[9]  *See* Rankin v. Klevenhagen, 5 F.3d 103, 108 (5th Cir. 1993) (where excessive force claim by inmate turns on choosing between dueling but plausible narratives by the plaintiff and defendant, disposition is "dependent on a fact-sensitive inquiry and credibility determinations" and "summary judgment is not a proper vehicle for the resolution of these disputed issues").  This court therefore recommends that Defendants' motion for summary judgment be denied.

<u>Limitation on Recovery</u>

Defendants also assert that, pursuant to 42 U.S.C. § 1997e(e), Plaintiff may not recover compensatory or punitive damages because, at most, Plaintiff's injuries were only *de minimis* in nature (doc. 65 at 12–16).

Title 42 U.S.C. § 1997e(e) provides: "No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury."  The Eleventh Circuit has decided that the phrase "Federal civil actions" means all federal claims, including constitutional claims.  Napier v. Preslicka, 314 F.3d 528, 532 (11th Cir. 2000) (citation omitted).  Where a prisoner plaintiff alleges constitutional violations he is prevented under § 1997e(e) from seeking punitive or compensatory damages in the absence of a physical injury.  Smith v. Allen, 502 F.3d 1255, 1271 (11th Cir. 2007) *abrogated on other grounds by* Sossamon v. Texas, ___U.S.___, 131 S. Ct. 1651, 179 L. Ed. 2d 700 (2011)); *see also* Al-Amin v. Smith, 637 F.3d 1192, 1199 (11th Cir. 2011) (noting that Napier court, by affirming dismissal of Napier's entire claim, "concluded, albeit *sub silentio*, that Napier's punitive claim was barred by § 1997e(e) just as much as his compensatory claim.").  Nominal damages, however, may still be recoverable.  Smith, 502 F.3d at 1271.

---

[9] Evidence of motive may also be relevant in assessing whether force was applied in good faith or maliciously and sadistically for the purpose of causing harm.  *See* Hudson, 503 U.S. at 6.  In this case, Plaintiff alleges that retaliation was the motive for Defendants' alleged use of excessive force, i.e., that Plaintiff had a heated argument with a correctional officer in Q-Dormitory the day prior to the incident at issue here and that Johnson stated just prior to taking Plaintiff down, "This is a hit from Q-Dormitory." (doc. 1 at 5).  Defendants, on the other hand, contend their only motive in using force against Plaintiff arose spontaneously and in response to his unruly conduct.  As noted previously, they state they do not know why Plaintiff acted in the manner they describe but posit that it may have been because he was being transferred to a more restrictive dormitory, one with fewer privileges and comforts than he had previously enjoyed (docs. 66-1 at 2, 66-2 at 2).  Any disputed issue concerning motive likewise is proper for a jury to decide.

"In order to avoid dismissal under § 1997e(e), a prisoner's claims for emotional or mental injury must be accompanied by allegations of physical injuries that are greater than *de minimis*." Mitchell v. Brown & Williamson Tobacco Corp., 294 F.3d 1309, 1312–13 (11th Cir. 2002); *see also* Mann v. McNeil, 360 F. App'x 31, 32 (11th Cir. 2010) (holding that § 1997e(e) barred inmate's claims for monetary damages; inmate's complaints of vague injuries to his back and scrapes and marks on his knees and legs did not amount to more than *de minimis* physical injury); Nolin v. Isbell, 207 F.3d 1253, 1258 n.4 (11th Cir. 2000) (bruises received during an arrest were non-actionable *de minimis* injury); Quinlan v. Personal Transp. Servs. Co., 329 F. App'x 246, 249 (11th Cir. 2009) (holding that § 1997e(e) barred pre-trial detainee's claims for compensatory and punitive damages; complaints of temporary chest pain, headache and difficulty breathing while in transport van, as well as subsequent "continuous back pain in [his] lower back that periodically cause[d] [him] to walk hunched over," did not constitute more than *de minimis* physical injury required under § 1997e(e), since none of the conditions required immediate medical attention or evidenced physical injury besides discomfort).

In arguing that Plaintiff should be required to show more than *de minimis* physical injury in order to proceed against Defendants for punitive and compensatory damages, Defendants cite Mitchell v. Horn, 318 F.3d 523 (3d Cir. 2003). In particular, Defendants cite Horn for the statement that the Third Circuit's "requirement [of more than *de minimis* physical injury for claims subject to § 1997e(e)] was not based on an analogy to Eighth Amendment jurisprudence" (doc. 65 at 13 n.7).

Curiously, however, Defendants cite most—but not all—of the Third Circuit's statement. More fully, the quotation reads: "Our requirement of more than *de minimis* physical injury for § 1997e(e) claims is not based on an analogy to Eighth Amendment jurisprudence, as is true in the Fifth and Eleventh Circuits." Mitchell, 318 F. 523 at 536, n.13 (citing Harris v. Garner, 190 F.3d 1279, 1286–87 (11th Cir. 1999), *reh'g en banc granted and opinion vacated*, 197 F.3d 1059 (11th Cir.1999), *opinion reinstated in relevant part en banc*, 216 F.3d 970 (11th Cir. 2000) (emphasis added)). In Harris, the court stated, "We therefore join the Fifth Circuit in fusing the physical injury analysis under section 1997e(e) with the framework set out by the Supreme Court in Hudson for analyzing claims brought under the Eighth Amendment for cruel and unusual punishment, and hold

that in order to satisfy section 1997e(e) the physical injury must be more than *de minimis*, but need not be significant." Harris, 190 F.3d at 1286.

Under binding circuit precedent, this court therefore must "fus[e] the physical injury analysis under section 1997e(e) with the framework set out by the Supreme Court in Hudson for analyzing claims brought under the Eighth Amendment for cruel and unusual punishment." *Id.* Under this analysis, and for the reasons stated previously, the court concludes that for Eighth Amendment and summary judgment purposes Plaintiff sustained injury that was more than *de minimis* in nature as a result of the February 27, 2012, use-of-force incident. Consequently, the court further concludes that at this stage of the litigation, Plaintiff's "more than *de minimis*" injuries are likewise sufficient to avoid having his claims for punitive and compensatory damages barred by § 1997e(e).[10]

V. CONCLUSION

Viewing the evidence in the light most favorable to Plaintiff, the non-movant, the court finds that a genuine dispute of material fact exists which precludes summary judgment for Defendants on Plaintiff's Eighth Amendment claim of excessive force. Additionally, Plaintiff's claims for punitive and compensatory damages should be not be barred by 42 U.S.C. § 1997e(e).

Accordingly, it is respectfully **RECOMMENDED**:

1. That the motion for summary judgment filed by Defendants Johnson and Clark (doc. 65) be **DENIED**.

2. That this matter be referred to the undersigned to conduct pre-trial proceedings.

---

[10] Plaintiff appears to sue Defendants in their individual capacities only (doc. 1 at 9). To the extent Plaintiff would seek to sue Defendants in their official capacities for damages, however, such suit would be barred by the Eleventh Amendment. *See* Miller v. King, 384 F.3d 1248 (11th Cir. 2004) (a plaintiff may not bring a § 1983 action for monetary damages against the state or state officials in their official capacities). Absent waiver or express congressional abrogation, the Eleventh Amendment prohibits a suit brought by a private individual against a state in federal court. *See* Federal Maritime Commission v. South Carolina State Ports Authority, 535 U.S. 743, 765–78, 122 S. Ct. 1864, 152 L. Ed. 2d 962 (2002); Kentucky v. Graham, 473 U.S. 159, 167 n.14, 105 S. Ct. 3099, 87 L. Ed. 2d 114 (1985); Gamble v. Florida Department of Heath and Rehabilitative Services, 779 F.2d 1509, 1511 (11th Cir. 1986). A suit against a state employee in his official capacity is deemed to be a suit against the state for Eleventh Amendment purposes. Will v. Michigan Dept. of State Police, 491 U.S. 58, 71, 109 S. Ct. 2304, 105 L. Ed. 2d 45 (1989).

Case No.: 3:12cv218/RV/EMT

At Pensacola, Florida, this 27th day of November 2013.

/s/ *Elizabeth M. Timothy*
**ELIZABETH M. TIMOTHY**
**UNITED STATES MAGISTRATE JUDGE**

**NOTICE TO THE PARTIES**

**Objections to these proposed findings and recommendations may be filed within fourteen (14) days after being served a copy thereof.  Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control.  A copy of objections shall be served upon the magistrate judge and all other parties.  Failure to object may limit the scope of appellate review of factual findings.**  *See* **28 U.S.C. § 636; United States v. Roberts, 858 F.2d 698, 701 (11th Cir. 1988).**